Rockingham
No. 91-197

THE STATE OF NEW HAMPSHIRE

v.

ELMER LEE BARRON

April 7, 1993

*John P. Arnold*, attorney general (*Ann M. Rice*, assistant attorney general, on the brief and orally), for the State.

*W. Kirk Abbott, Jr.*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. The defendant, Elmer Lee Barron, was convicted by a jury in superior court of first degree murder. On appeal, the defendant contends that a nighttime search of his apartment had not been authorized by the issuing magistrate, and therefore violated RSA 595-A:2 and :3 (1986), as well as his rights under the fourth

amendment to the Federal Constitution, and part I, article 19, of the New Hampshire Constitution. We affirm.

On April 26, 1990, the New Hampshire State Police submitted an application for a search warrant with a supporting affidavit to a Derry District Court judge (the "issuing magistrate") sometime between 10:00 and 11:00 p.m. The police sought to search the defendant's apartment in Londonderry for "instruments for administering blunt trauma, instruments for administering injuries which would cause bleeding, blood stained items, fingerprints, hair, fibers, other microscopic or trace evidence, a body [and] any item belonging to [the victim]." The supporting affidavit indicated that the defendant was the lessee of the apartment and that he had been arrested and was in police custody at the time. There was nothing in the affidavit that indicated that anyone else lived in the apartment rented to the defendant. Based on the application and supporting affidavit, the issuing magistrate signed the warrant form commanding the police "in the daytime (or at any time of the day or night) to make an immediate search of [the defendant's apartment]." The police immediately executed the warrant at approximately 11:20 p.m.

Before trial, the defendant moved to suppress the evidence seized from his apartment during the nighttime search. The Superior Court (*McHugh*, J.) denied the motion.

On appeal, the defendant argues that the nighttime search violated RSA 595-A:2 and :3; part I, article 19 of the State Constitution; and the fourth amendment to the Federal Constitution, because the issuing magistrate did not explicitly authorize the nighttime search, and the supporting affidavit did not contain sufficient facts to justify a nighttime search. Specifically, the defendant contends that the issuing magistrate "apparently signed the warrant without designating whether a nighttime search was authorized" since the magistrate did not circle or strike any of the preprinted language on the actual warrant form that directed the police to search "in the daytime (or at any time of the day or night)." Furthermore, the defendant argues that the affidavit failed to articulate any basis for a nighttime search, and thus the State cannot claim that the magistrate intended to authorize a nighttime search.

The State, however, maintains that the nighttime search was conducted in accordance with statutory requirements. The State argues that if the magistrate had decided to limit his authorization to the daytime, he would have crossed out the parenthetical phrase: "(or at any time of the day or night)." Moreover, the State argues that the affidavit and surrounding circumstances justified the authorization of a nighttime search.

■ RSA 595-A:2 requires that search warrants "shall be substantially in the form prescribed in RSA 595-A:3 and shall be directed to a . . . police officer, commanding him to search in the daytime, *or if the warrant so directs, in the nighttime . . . .*" RSA 595-A:2 (emphasis added). The relevant language of the search warrant in the present case is identical to the language in the prescribed form: "We therefore command you in the daytime (or at any time of the day or night) to make an immediate search . . . ." RSA 595-A:3. The plain language of RSA 595-A:2 requires the issuing magistrate to specifically authorize a nighttime search. Neither the statute nor the prescribed form, however, indicate the manner in which the magistrate must authorize a nighttime search. The defendant reads into the statute an additional requirement by suggesting that the magistrate must either cross out the words "the daytime," which precede the parenthetical, or circle the parenthetical provision. We find no such requirement in RSA 595-A:2 or :3. Instead, the form allows for both contingencies, "daytime" and "any time of the day or night," thus requiring the issuing magistrate to strike out the nighttime language if a nighttime search is not authorized. By not striking out the nighttime provision, the issuing magistrate authorized the nighttime search of the defendant's apartment. We assume that the issuing magistrate read the form, was familiar with it, and understood that action was required if he did not intend to authorize a nighttime search.

■ The defendant next argues that the supporting affidavit neither requested a nighttime search nor contained a sufficient factual basis to justify a nighttime search. We disagree. In his argument, the defendant cites to cases from other jurisdictions which require, by statute or rule, that the application and supporting affidavit for a nighttime search include a specific request and factual basis for justifying a nighttime search. For a nighttime search warrant in New Hampshire, our statute is silent on what is required in the supporting affidavit. Before the current version of RSA chapter 595-A was enacted, the warrant statute required that a nighttime search be supported by "*satisfactory evidence* that any such property or thing, or any criminal, is concealed in a particular house or place, and *may be removed or escape before day* . . . ." RSA 595:2 (1969) (repealed) (emphasis added). In 1969, the legislature deleted this "satisfactory evidence" requirement by repealing RSA 595:2. The current warrant statute does not set forth any specific requirement for procuring a nighttime search warrant.

■ The defendant argues that the statute implicitly requires some showing of necessity for a nighttime search. Assuming, without deciding, that our statute requires a sufficient factual basis to justify a nighttime search, we hold that there were sufficient facts to demonstrate the need for an immediate search on the night of April 26, 1990. The affidavit detailed the evidence which led the police to believe that the items listed in the warrant application would be in the defendant's apartment. The affidavit established that the police were searching for the body of a missing person, without knowing whether the person was dead or injured. The person had been missing for two days. A neighbor had reported that a loud confrontation occurred in the defendant's apartment. In the inventory search of a stolen truck driven by the defendant, the police had found bloodstained items and a knife. The defendant's clothing at the time of his arrest was also bloodstained. At the time of the booking procedure, the defendant had discarded two identification cards belonging to the missing person. Finally, on the day that the victim was reported as missing, his vehicle had been seen in the parking lot where the defendant lived. We find that these facts, considered in tandem with the facts that the police requested an immediate search and made their request at night, justified the authorization of a nighttime search.

■ Finally, the defendant argues that because the nighttime search constituted a flagrant violation of RSA 595-A:2, it was unreasonable under both the State and Federal Constitutions and required suppression of the evidence. Because we have found no statutory violation at all, we reject the defendant's constitutional claims.

*Affirmed.*

All concurred.